UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JIMMY TOBIAS,

               *Plaintiff,*

      v.

U.S. DEPARTMENT OF INTERIOR, *et al*.,

               *Defendants*.

Civil Action No. 22-0167 (BAH)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

ERIKA OBLEA, DC BAR #1034393
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2567
erika.oblea@usdoj.gov

*Attorneys for the United States of America*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

      I.     Defendants Properly Applied FOIA Exemption 5.................................................. 4

             A.     The Withholdings Invoking the Deliberative Process Privilege Are
Appropriate. ............................................................................................. 6

             B.     The Withholdings Invoking the Attorney-Client Privilege Are
Appropriate. ............................................................................................. 9

      II.    Defendants Released All Reasonably Segregable Information. .......................... 10

CONCLUSION................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amadis v. U.S. Dep't of State,*
    971 F.3d 364 (D.C. Cir. 2020) ............................................................ 9

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................ 3

*Armstrong v. Exec. Off. of the President,*
    97 F.3d 575 (D.C. Cir. 1996) ............................................................ 10

*Brayton v. Off. of the U.S. Trade Representative,*
    641 F.3d 521 (D.C. Cir. 2011) ............................................................ 3

*Canning v. U.S. DOJ,*
    567 F. Supp. 2d 104 (D.D.C. 2008) ............................................................ 10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................ 3

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Com.,*
    600 F. Supp. 114 (D.D.C. 1984) ............................................................ 7

*Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Sec.,*
    648 F. Supp. 2d 152 (D.D.C. 2009) ............................................................ 7

*Citizens for Responsibility & Ethics v. U.S. Dep't of Labor,*
    478 F. Supp. 2d 77 (D.D.C. 2007) ............................................................ 4, 5

*Cleveland v. U.S. Dep't of State,*
    128 F. Supp. 3d 284 (D.D.C. 2015) ............................................................ 6

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ............................................................ 6, 7, 9

*DOI v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) ............................................................ 6

*FPL Grp., Inc. v. IRS,*
    698 F. Supp. 2d 66 (D.D.C. 2010) ............................................................ 7

*In re Sealed Case,*
    737 F.2d 94 (D.C. Cir. 1984) ............................................................ 9

*Jud. Watch, Inc. v. Dep't of Just.,*
    20 F.4th 49 (D.C. Cir. 2021) ............................................................ 6

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ............................................................ 4

*Mapother v. Dep't of Just.,*
   3 F.3d 1533 (D.C. Cir. 1993) ............................................................................. 6

*McCutchen v. U.S. Dep't of Health & Human Servs.,*
   30 F.3d 183 (D.C. Cir. 1994) ............................................................................. 4

*McGehee v. CIA,*
   697 F.2d 1095 (D.C. Cir. 1983) ......................................................................... 4

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,*
   566 F.2d 242 (D.C. Cir. 1977) ................................................................... 10, 5, 9

*Media Rsch. Ctr. v. U.S. DOJ,*
   818 F. Supp. 2d 131 (D.D.C. 2011) .................................................................. 3, 4

*Mil. Audit Project v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981) .......................................................................... 4, 5

*Nat'l Treasury Emps. Union v. U.S. Customs Serv.,*
   802 F.2d 525 (D.C. Cir. 1986) ............................................................................ 5

*NLRB v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975) ................................................................................ 6, 7, 8, 9

*Petrol. Info. Corp. v. U.S. Dep't of Interior,*
   976 F.2d 1429 (D.C. Cir. 1992) ........................................................................ 6, 7

*Pub. Citizen Health Rsch. Grp. v. FDA,*
   185 F.3d 898 (D.C. Cir. 1999) ......................................................................... 4-5

\* *Reporters Comm. for Freedom of the Press v. FBI,*
   3 F.4th 350 (D.C. Cir. 2021) ......................................................................... 6, 7, 9

*Rockwell Int'l Corp. v. DOJ,*
   235 F.3d 598 (D.C. Cir. 2001) ............................................................................ 6

*SafeCard Servs., Inc. v. SEC,*
   926 F.2d 1197 (D.C. Cir. 1991) ......................................................................... 4

*Spirko v. U.S. Postal Serv.,*
   147 F.3d 992 (D.C. Cir. 1998) ............................................................................ 5

*Sussman v. U.S. Marshals Serv.,*
   494 F.3d 1106 (D.C. Cir. 2007) ........................................................................ 10

*Tax Analysts v. IRS,*
   117 F.3d 607 (D.C. Cir. 1997) ...................................................................... 10, 9

*U.S. Dep't of Def. v. FLRA,*
   510 U.S. 487 (1994) ........................................................................................... 4

*U.S. DOJ v. Tax Analysts*,
   492 U.S. 136 (1989) ................................................................................................ 4

\* *Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ............................................................................... 5

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 5

**Statutes**

5 U.S.C. § 552 ....................................................................................... 4, 5, 9, 10
16 U.S.C. § 1532 ............................................................................................... 2
16 U.S.C. § 1539 ............................................................................................... 2

**Rules**

Fed. R. Civ. P. 56 ............................................................................................. 3

The only issue in this Freedom of Information Act ("FOIA") case is the U.S. Fish and Wildlife Service's (the "Service") redactions under the deliberative process privilege and attorney-client privilege. In this case, Plaintiff Jimmy Tobias sought certain records related to the Department of Interior's (the "Department") review of a white paper submitted by proponents of a habitat conservation plan that was then under consideration by the Service. Many of the responsive records concerned discussions between and among Service employees, including Department attorneys, conveying these agency employees' thoughts, impressions, and recommendations regarding the Service's eventual decision on the said-habitat conservation plan. The Service's redactions of these internal, pre-decisional agency discussions fall squarely within FOIA Exemption 5's deliberative process and attorney client privileges. Therefore, Defendants the Department and the Service respectfully move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.

## BACKGROUND

On May 6, 2020, Plaintiff submitted a FOIA request to the Service seeking records related to the Department Office of the Solicitor's review of a white paper, "The Proper Scope of Environmental Analysis of Roadway Impacts." Decl. of Stacey C. Cummins, dated April 21, 2023 ¶ 3 ("Cummins Decl."); Ex. A, Cummins Decl. This white paper was purportedly written by lawyers for the Eastern Collier Property Owners (the "Owners"). Pursuant to the Endangered Species Act (the "Act"), on June 3, 2010, the Owners had submitted an Incidental Take Permit (the "Permit Application") to the Service, along with a Habitat Conservation Plan (the "Plan"), for their property. Ex. A, Cummins Decl.; East Collier Multi-Species ITP/HCP Withdrawal, U.S. Fish & Wildlife Serv., https://www.fws.gov/library/collections/east-collier-multi-species-itphcp-

withdrawal.[1] Specifically, Plaintiff sought "any emails, email attachments, or other documents related to the Solicitor's review," including any communications between the Office of the Solicitor or the Service and the Owners and their lawyers. Ex. A, Cummins Decl.

Under the Act, "[i]ncidental take permits may be sought when a non-federal entity believes their otherwise lawful activities may result in take of endangered or threatened animal species." 3-200-56: Incidental Take Permits Associated with a Habitat Conservation Plan, U.S. Fish & Wildlife Serv., https://www.fws.gov/service/3-200-56-incidental-take-permits-associated-habitat-conservation-plan; 16 U.S.C. § 1539(a)(1)(B). A "take" is to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Before the Service can issue an incidental take permit, the Service must consider a habitat conservation plan submitted by the applicant to "ensure[] that the effects of the authorized incidental take are adequately minimized and mitigated." 200-56: Incidental Take Permits; 16 U.S.C. § 1539(2)(A).

On May 15, 2020, the Service acknowledged receipt of Plaintiff's FOIA request. Cummins Decl. ¶ 4; Ex. B, Cummins Decl. On April 1, 2021, the Service made its first release, releasing 20 pages in full. Cummins Decl. ¶ 6; Ex. C, Cummins Decl. On August 19, 2021, the Service made its final release, releasing 140 pages in part. Cummins Decl. ¶ 7; Ex. D, Cummins Decl. The Service noted it had withheld portions of these materials an additional 69 pages pursuant to Exemption 5. Cummins Decl. ¶ 7; Ex. D, Cummins Decl. The Service also stated it withheld 11 pages in part and 112 pages in full pursuant to Exemption 5. Cummins Decl. ¶ 7; Ex. D, Cummins

---

[1]     On July 28, 2022, the Owners withdrew their Permit Application. *Id.* At the time of the Owners' withdrawal, the Service had not made a final determination regarding the Permit Application or the Plan. *Id.*

Decl. On September 8, 2021, Plaintiff filed an appeal to the Service, disputing the redactions and withholdings under Exemption 5. Cummins Decl. ¶ 8; Ex. E, Cummins Decl.

Thereafter, on January 25, 2022, Plaintiff filed suit in this Court seeking records in response to its request. Compl., ECF No. 1. On July 7, 2022, the Service made a supplemental release, releasing 222 pages in part, 56 pages of which were withheld in part, and withholding two pages in full pursuant to Exemption 5. Cummins Decl. ¶ 11; Ex. F, Cummins Decl. Thus, after the Service's supplemental release, there is a total of 56 pages withheld in part and two pages withheld in full pursuant to Exemption 5. Cummins Decl. ¶ 11. The parties have met and conferred, and the only issue remaining in dispute is the application of these Exemption 5 redactions and withholdings. Joint Status Report ¶ 3, ECF No. 17.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."). A government agency may obtain summary

judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

## ARGUMENT

## I.   Defendants Properly Applied FOIA Exemption 5.

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of FOIA's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Pub. Citizen Health Rsch.*

*Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treas. Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986); *see also Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973). The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treas.*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998). The Service's *Vaughn* Index is attached as Exhibit G to the Declaration of Stacey Cummins and provides further detail on the Service's basis for its withholdings. Cummins Decl. ¶¶ 12, 21, 25.

Exemption 5, in particular, protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in

the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001). In this case, the Exemption 5 withholdings invoke the deliberative process and the attorney-client privileges.

### A.   The Withholdings Invoking the Deliberative Process Privilege Are Appropriate.

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States*, 617 F.2d at 866).

The deliberative process privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (internal quotation marks and citations omitted); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021).

The privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151–53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). Within this context, the agency must demonstrate foreseeable harm, which requires the agency to make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." Min. Order (Mar. 28, 2022) (quoting *Reps. Comm.*, 3 F.4th at 370).

The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petroleum Info.*, 976 F.2d at 1433–34 (internal quotations omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions[.]'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

All the records were withheld in this case pursuant to the deliberative process privilege. *See* Cummins Decl. ¶¶ 15-16; Ex. G, Cummins Decl. The Service only withheld records that preceded a final Agency determination related to the Permit or the Plan. Cummins Decl. ¶ 19; Ex. G, Cummins Decl. The records withheld are deliberative as they involve portions of email discussions among Service employees (including these Service employees' reference to a draft

agency document), a document created by Service employees to facilitate intra-agency discussions, and comment bubbles added by Service employees while reviewing the white paper at issue. Cummins Decl. ¶ 15; Ex. G, Cummins Decl. Each of the withheld records reflect these Service employees' discussions and considerations of several different issues and projected impacts related to the proposed Plan they were considering in connection with the Owners' Permit Application. Cummins Decl. ¶ 18; Ex. G., Cummins Decl. In particular, these Service employees were discussing and considering issues such as the traffic effects of the Plan, legal considerations and recommendations when meeting with the Owners and their attorney, and the Service's legal obligations when considering the Plan, including its legal obligations under the Act. Ex. G., Cummins Decl.

The Service would be harmed by releasing this information. The Service has explained that the release of this information would severely hamper the efficient day-to-day workings of government agencies because the Service employees would no longer feel free to work through problems by sharing ideas with colleagues via email messages. Ex. G, Cummins Decl. If this discussion were to be released to the public, Department and Service employees would be more circumspect in their written discussions with each other in the future. *Id*. The Service has further explained that this lack of candor would seriously impair the Department's and the Service's ability to foster the forthright intra-agency discussions that are necessary for efficient and proper decision making, especially as it relates to documentation necessary for adherence to the Act and the consideration of habitat conservation plans submitted with incidental take permits. *Id*. In addition, disclosure of the Service's preliminary assessments and opinions would mislead the public and cause public confusion by releasing information that does not represent a final agency opinion. *Id*. Indeed, it is critical that the Department and the Service can engage in unfettered

internal discussion and advice-seeking before settling on a final response to outside parties like the Owners in this instance. *Id*. Otherwise, the Department's and the Service's ability to act with one voice and convey accurate and through responses to outside parties would be hampered. *Id*.

Defendants have thus provided "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370. Accordingly, this chilling effect adequately fulfills the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I). *See Amadis v. Dep't of State*, 971 F.3d 364, 370–73 (D.C. Cir. 2020). Because the materials are pre-decisional and deliberative, the Agency properly protected the information withheld under Exemption 5.

### B.      The Withholdings Invoking the Attorney-Client Privilege Are Appropriate.

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data*, 566 F.2d at 252.  This privilege protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts*, 117 F.3d at 618 (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)). Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *see also Tax Analysts*, 117 F.3d at 618 ("[T]he 'client' may be the agency and the attorney may be an agency lawyer.").

As the Service's declaration and *Vaughn* index demonstrate, the Service withheld certain portions of the records that related to discussions between Service employees and Department attorneys. Cummins Decl. ¶ 23; Ex. G at 2-4, Cummins Decl. In these discussions, Service employees were seeking and obtaining legal advice on the most appropriate, legally sound

approach for an upcoming between the Service and the Owners and their attorney, or were providing information on the projected impacts of the Plan in response to Department attorneys' questions before the Department attorneys provided legal recommendations on the Plan. *Id.*

Release of this information would cause foreseeable harm to the Service and the Department. Release of this information would chill Service employees and Department attorneys from seeking or providing legal advice, if it was known that these communications would all be made public soon thereafter. Cummins Decl. ¶ 24; Ex. G at 2-4, Cummins. Accordingly, the Agency properly withheld these privileged communications pursuant to Exemption 5.

## II.    **Defendants Released All Reasonably Segregable Information.**

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). As explained in the Cummins Declaration and accompanying *Vaughn* index, the Agency properly considered each record and released all reasonably segregable information. Cummins Decl. ¶¶ 26-27; Ex. G, Cummins Decl.

**CONCLUSION**

For all the reasons set forth above and in the accompanying declaration and *Vaughn* index,

Defendants respectfully request that the Court grant summary judgment in their favor.


Dated:  April 21, 2023                    Respectfully submitted,

                                          MATTHEW M. GRAVES, DC Bar #481052
                                          United States Attorney

                                          BRIAN P. HUDAK
                                          Chief, Civil Division

                          By:     /s/ *Erika Oblea*
                                          ERIKA OBLEA, DC Bar #1034393
                                          Assistant United States Attorney
                                          601 D Street, N.W.
                                          Washington, D.C.  20530
                                          (202) 252-2567
                                          erika.oblea@usdoj.gov

                                          *Attorneys for the United States of America*