# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JIMMY TOBIAS,

                Plaintiff,

                v.

U.S. DEPARTMENT OF INTERIOR and
U.S. FISH AND WILDLIFE SERVICE,

                Defendants.

Civil Action No. 22-167 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff Jimmy Tobias challenges the response of the U.S. Fish and Wildlife Service ("FWS"), a component of the U.S. Department of Interior ("DOI"), to his May 6, 2020 request, submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records related to DOI's review of a white paper titled "The Proper Scope of Environmental Analysis of Roadway Impacts" (the "White Paper"). *See generally* Compl., ECF No. 1; Compl., Ex. 1, ECF No. 1-1. Specifically, plaintiff alleges that defendants have improperly withheld information, under the deliberative process privilege provided in FOIA's Exemption 5, and have failed to satisfy the foreseeable harm standard of the FOIA Improvement Act as to its invocation of both the deliberative process privilege and the attorney-client privilege.

Pending before the Court are the parties' cross-motions for summary judgment. *See* Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 18; Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No. 18-1; Pl.'s Opp'n Defs.' Mot. Summ. J. & Cross-Mot. Summ. J., ECF No. 20; Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. & Cross-Mot. Summ. J. ("Pl.'s Mem."), ECF No. 20-1; Defs.' Opp'n Pl.'s Cross-Mot. Summ. J. & Reply Supp. Defs.' Mot. Summ. J. ("Defs.'

Reply"), ECF No. 23-1; Pl.'s Reply Supp. Pl.'s Mot. Summ. J. ("Pl.'s Reply"), ECF No. 26.[1]

For the reasons set forth below, defendants' motion is granted, and plaintiff's motion is denied.

## I.      BACKGROUND

The White Paper, which is the subject of plaintiff's FOIA request, as well as defendants' response and the relevant procedural history are briefly described below.

### A.      The White Paper

In relevant part, the Endangered Species Act makes it unlawful for any person to "take any [endangered species of fish or wildlife] within the United States or the territorial sea of the United States."  16 U.S.C. § 1538(a)(1)(B); *see also id.* § 1532(19) ("The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct.").  The Secretary of Interior is authorized "under such terms and conditions as he shall prescribe," to "permit" any such taking that is "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity."  *Id.* § 1539(a)(1); *see also 3-200-56: Incidental Take Permits Associated with a Habitat Conservation Plan*, U.S. Fish & Wildlife Serv., https://www.fws.gov/service/3-200-56-incidental-take-permits-associated-habitat-conservation-plan ("Incidental take permits may be sought when a non-federal entity believes their otherwise lawful activities may result in take of endangered or threatened animal species.").  Before a take permit may be issued, the Secretary must review a "conservation plan" that addresses, *inter alia*, "the impact [that] will likely result from such taking," the "steps the applicant will take to minimize and mitigate such impacts," and "alternative actions to such taking the applicant

---

[1]      Several of the memoranda filed in support of these motions are docketed twice, and, to simplify citation, only one of the duplicate memoranda will be referenced.  For example, Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment, and accompanying exhibits, is docketed twice, at both ECF Nos. 20 and 21, and only the former will cited.  Likewise, Defendants' Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendants' Motion for Summary Judgment, and accompanying exhibits, is docketed twice at ECF Nos. 23 and 24, and only the former is cited.

considered and the reasons why such alternatives are not being utilized."  16 U.S.C.

§ 1539(a)(2)(A).

On June 3, 2010, the Eastern Collier Property Owners (the "Owners") applied for an

incidental take permit (the "Permit Application") from FWS and submitted a summary of their

conservation plan (the "Plan").  Defs.' Resp. Pl.'s Statement of Material Facts ("Defs.' Resp.

SMF") ¶ 3, ECF No. 23-2.  Nearly seven years later, in February 2017, the Owners submitted, in

connection with the same Permit Application, a white paper titled "The Proper Scope of

Environmental Analysis of Roadway Impacts," which made arguments about the appropriate

scope of FWS's environmental analysis and the application of the relevant legal standards to the

Owners' take permit application.  *Id.* ¶ 4; *see also* Pl.'s Opp'n, Decl. of Jimmy Tobias ("Tobias

Decl.") at 10–20, ECF No. 20-2 (the White Paper).  On July 28, 2022, the Owners withdrew their

application before receiving a final determination from FWS on their Permit Application, which

by then had been pending for over twelve years.  *See* Defs.' Resp. SMF ¶ 8; *see also East Collier

Multi-Species ITP/HCP Withdrawal*, U.S. Fish & Wildlife Serv.,

https://www.fws.gov/library/collections/east-collier-multi-species-itphcp-withdrawal.

**B.    Plaintiff's FOIA Request**

Plaintiff, an investigative environmental reporter, submitted, by email, on May 6, 2020, a

FOIA request to FWS seeking documents relating to the DOI's Office of the Solicitor's review

of the White Paper.  *See* Defs.' Mot., Decl. of Stacey C. Cummins ("Cummins Decl."), Ex. A

("FOIA Request"), ECF No. 18-5; *see also* Pl.'s Resp. Defs.' Statement of Material Facts ("Pl.'s

Resp. SMF") ¶ 3, ECF No. 20-4.  The request sought, *inter alia*, communications within FWS

and between FWS and the Owners regarding the White Paper.  *See* FOIA Request at 2–3.

On May 15, 2020, FWS acknowledged receipt of the request, and six FWS employees searched through electronic agency files, both manually and by automated means, to locate responsive records.  *See* Defs.' Mot., Cummins Decl., Ex. B, ECF No. 18-6; Pl.'s Resp. SMF ¶¶ 4–5.  FWS made two productions: on April 1 and August 19, 2021.  The first production consisted of 20 pages, with no redactions.  *See* Defs.' Mot., Cummins Decl., Ex. C, ECF No. 18-7; Pl.'s Resp. SMF ¶ 6.  The second production consisted of 140 pages, which were released with redactions, and 69 pages were withheld in full, pursuant to Exemption 5.  *See* Defs.' Mot., Cummins Decl., Ex. D, ECF No. 18-8; *see also* Pl.'s Resp. SMF ¶ 7; Joint Status Rep. (Feb. 16, 2023) ("Feb. 2023 JSR"), ECF No. 17.

Plaintiff administratively appealed defendants' Exemption 5 redactions and withholdings.  *See* Defs.' Mot., Cummins Decl., Ex. E, ECF No. 18-9; *see also* Pl.'s Resp. SMF ¶ 8.

### C.    Procedural History

Before resolution of the administrative appeal, plaintiff initiated this action, on January 25, 2022.  *See generally* Compl.  The parties continued to confer, resulting in two supplemental productions.  First, on July 7, 2022, defendants made a "renewed production" of 222 pages, of which 56 pages were withheld in part and two pages were withheld in full, pursuant to Exemption 5.  Pl.'s Resp. SMF ¶ 9; *see* Defs.' Mot., Cummins Decl., Ex. F, ECF No. 18-10.  The applicability of Exemption 5 to these 58 pages is the focus of the parties' cross-motions for summary judgment.  *See* Feb. 2023 JSR at 2.

When plaintiff's cross-motion for summary judgment raised concerns about the sufficiency of defendants' first *Vaughn* Index, defendants, on July 28, 2023, released additional information in over 45 pages throughout the 222-page document.  *See* Defs.' Reply, Second Decl. of Stacey C. Cummins ("2d Cummins Decl.") ¶ 8, ECF No. 23-4.  Still, 55 pages remain

withheld in part and two pages remain withheld in full, pursuant to Exemption 5.  *Id.*  The

applicability of Exemption 5 to these 57 pages is the dispute at issue here.

## II.    LEGAL STANDARD

Summary judgment may be granted under Federal Rule of Civil Procedure 56 "only if

there is no genuine issue of material fact and judgment in the movant's favor is proper as a

matter of law."  *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018)

(quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C.

Cir. 2006)); *see also* Fed. R. Civ. P. 56(a).  In FOIA cases, "courts must grant summary

judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with

'reasonably specific detail'; and (2) is not substantially called into question by contrary record

evidence or evidence of agency bad faith."  *Schaerr v. Dep't of Justice*, 69 F.4th 924, 929 (D.C.

Cir. 2023) (quoting *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007)).  Most

FOIA cases "can be resolved on summary judgment."  *Brayton v. Off. of U.S. Trade*

*Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"The fundamental principle animating FOIA is public access to government documents."

*Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quoting *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)).  Agencies are, therefore,

statutorily mandated to "make . . . records promptly available to any person" who submits a

request that "reasonably describes such records" and "is made in accordance with [the agency's]

published rules."  5 U.S.C. § 552(a)(3)(A).  "Congress, however, did not pursue transparency at

all costs"; "[r]ather, it recognized that legitimate governmental and private interests could be

harmed by release of certain types of information."  *Citizens for Resp. & Ethics in Wash. v.*

*Dep't of Justice* ("*CREW*"), 45 F.4th 963, 967 (D.C. Cir. 2022) (citations omitted).  To balance

those competing interests, "FOIA exempts nine categories of documents from 'the government's otherwise broad duty of disclosure.'" *Waterman*, 61 F.4th at 156 (quoting *AquAlliance v. Bureau of Reclamation*, 856 F.3d 101, 103 (D.C. Cir. 2017)).  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  When an agency invokes an exemption to disclosure, district courts must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015).  The statute "places the burden on the agency to sustain its action, and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019) (citation omitted).  This burden does not shift when the requester files a cross-motion for summary judgment because the agency ultimately "bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold." *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016).

The agency may sustain its burden "by submitting a *Vaughn* index, along with affidavits from agency employees that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.*; *see also Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 150 (D.D.C. 2018) ("An agency may carry its burden of showing an exemption was properly invoked by submitting

sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate.").  Agency declarations are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims."  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *Am. C.L. Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

## III.    DISCUSSION

Exemption 5—the only exemption at issue—protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  A record is exempt under Exemption 5 only if: (1) its "source" is a government agency; and (2) it "fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Nat'l Inst. of Mil. Just. v. Dep't of Def.*, 512 F.3d 677, 682 (D.C. Cir. 2008). The second condition incorporates the deliberative process privilege and the attorney-client privilege.  *See Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015).

Out of the 222 responsive pages, 55 pages remain withheld in part and two pages remain withheld in full.  Defendants justify all the redactions and withholdings by invoking the deliberative process privilege, while also invoking the attorney-client privilege for some.  While not disputing defendants' withholdings due to the attorney-client privilege, plaintiff challenges

defendants' reliance on the deliberative process privilege to withhold all the redacted material, as well as defendants' foreseeable harm analysis for their invocation of both the deliberative process privilege and the attorney client privilege.  Defendants' reliance on the deliberative process privilege is addressed first, before turning to their foreseeable harm analysis.

### A.      Defendants' Application of the Deliberative Process Privilege

Defendants have withheld "portions of email discussions among Service employees (including these Service employees' reference to a draft agency document), a document created by Service employees to facilitate intra-agency discussions, and comment bubbles added by Service employees while reviewing the white paper at issue."  Defs.' Mem. at 7–8; *see also* 2d Cummins Decl. ¶ 10.  After review of the applicable legal standard, these redactions are analyzed.

### 1.      *Legal Standard for the Deliberative Process Privilege*

The deliberative process privilege protects "open and frank discussion" among government officials to enhance the quality of agency decisions and thus allows federal agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath Water Users Protective Ass'n*, 532 U.S. at 8–9 (quoting *Nat'l Lab. Rels. Bd. v. Sears, Rosebuck & Co.*, 421 U.S. 132, 150 (1975)).  "To qualify for the deliberative process privilege, an intra-agency memorandum must be both pre-decisional and deliberative." *Abtew*, 808 F.3d at 898.  In general, "[a] document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegot. Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)).  "Deliberative," in turn, means that "the

communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. Cent. Intel. Agency*, 752 F.3d 460, 463 (D.C. Cir. 2014). The "key question" in evaluating material withheld under the deliberative process privilege is "whether disclosure of the information would discourage candid discussion within the agency." *Access Reps. v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (citation omitted).

To show that the deliberative privilege is properly invoked, the government must explain, for each withheld record, "(1) what deliberative process is involved, (2) the role played by the documents in issue in the course of that process, and (3) the nature of the decisionmaking authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents." *Ctr. for Biological Diversity v. Env't Prot. Agency*, 279 F. Supp. 3d 121, 147 (D.D.C. 2017) (alteration in original accepted and citations omitted). "The government, not the requester, must identify the deliberative process to which any record relates." *Ctr. for Investigative Reporting v. Customs & Border Prot.* ("*CIR*"), 436 F. Supp. 3d 90, 101 (D.D.C. 2019); *see also Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) ("[T]o approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed." (citation omitted)).

### 2.   *Defendants' Redactions Pursuant to the Deliberative Process Privilege*

The withheld records include (1) "portions of email discussions among Service employees (including these Service employees' reference to a draft agency document)"; (2) "a document created by Service employees to facilitate intra-agency discussions"; and (3) "comment bubbles added by Service employees while reviewing the white paper at issue," all of which, according to defendants, reflect "discussions and considerations of several different

issues and projected impacts related to" a "final Agency determination" on the Owner's Permit

Application and Plan.  Defs.' Mem. at 7–8; *see also* 2d Cummins Decl. ¶ 10 ("The redactions on

55 pages are applied to information in emails chains between FWS or Department employees, a

timeline document record, and comments written by FWS or Department employees in response

to the white paper . . . .  FWS also withheld in full two page . . . , which consist of the attachment

to an email in which FWS or Department employees are discussing FWS's legal requirements

under the Endangered Species Act in connection with the [Owners'] application for Incidental

Take Permits.").  Without disputing that the records are deliberative, plaintiff argues only that

defendants have failed to identify, with sufficient specificity, the deliberative process that is

linked to the withheld documents and thus that certain records are not predecisional.  *See* Pl.'s

Reply at 1–2.[2]  For the reasons below, plaintiff's arguments fail to persuade, and defendants'

explanation of its invocation of the deliberative process privilege is sufficient.

"[T]o approve an exemption of a document as predecisional, a court must be able to

pinpoint an agency decision or policy to which the document contributed."  *Senate of P.R.*, 823

F.2d at 585 (citation omitted); *see also CREW*, 45 F.4th at 972 ("Assessing whether a record is

pre-decisional or deliberative necessarily requires identifying the decision (and the associated

decisional process) to which the record pertains.").  "[A] broad and opaque description of the

deliberative process involved does not provide the Court with enough detail about whether these

documents are deliberative and predecisional."  *Trea Senior Citizens League v. Dep't of State*,

923 F. Supp. 2d 55, 68 (D.D.C. 2013).  Rather, the agency has the burden to demonstrate that

---

[2]     After defendants issued a Second *Vaughn* Index and declaration in response to plaintiff's cross-motion for summary judgment, plaintiff appears no longer to contest the deliberative nature of the redacted material, arguing only that "[t]he Service still has not shown that most records are predecisional."  Pl.'s Reply at 1.  Even if plaintiff had intended to persist in challenging the deliberative nature of the redacted material, plaintiff's arguments regarding whether the redacted material is deliberative and pre-decisional are the same; that is, plaintiff contends that the redacted material cannot be deliberative because the decision to apply but-for causation has already been made.  *See* Pl.'s Mem. at 5–6.  For the same reasons that follow, this argument, too, fails to persuade.

each withheld document was "generated as part of a definable decision-making process." *Gold Anti-Trust Action Comm., Inc. v. Bd of Governors of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011).

Defendants explain that the withholdings involve discussions regarding whether to issue the requested permits to the Owners.  Specifically, they contain discussions about:

> the proper scope of analysis for the take and environmental review required as part of the process to determine whether to issue the Incidental Take Permit to [the Owners].  In particular, FWS employees are considering how to analyze the extent to which increased vehicle traffic from the multi-faceted project proposed by [the Owners] would result in additional vehicular strikes of the Federally listed Florida Panther beyond the habitat conservation plan area but within the project's action area.

2d Cummins Decl. ¶ 12; *see also* Defs.' Reply at 4; Pl.'s Reply at 1.  For certain records, defendants further identify subsidiary decisions.  For example, the redaction labeled FWS-0031, located in emails between a subordinate FWS employee and his supervisor, involves discussions about whether the supervisor's "presence would be helpful at an upcoming meeting between FWS and [the Owners]" to discuss the proposals in the White Paper, and the subordinate employee's recommendations "for how the [FWS] should approach the upcoming meeting."  *See* Defs.' Reply, 2d Cummins Decl., Ex. H ("2d *Vaughn* Index") at 2, ECF No. 23-5.  To take another example, the redactions labeled FWS-000040 and FWS-000041 involve conversations between two FWS employees about the intra-FWS biological opinion that FWS was required to complete pursuant to Section 7 of the Endangered Species Act before issuance of an incidental take permit.  *Id.* at 3.  Specifically, "the withheld information consists of a subordinate FWS employee's proposed draft of information and a proposed question to send to an attorney in the Department of the Interior's Office of the Solicitor" about the "actions that the FWS is or is not legally obligated to take in the course of an intra-Service biological opinion."  *Id.*

Defendants have thus "identif[ied] a number of smaller decisions with specificity" and have "properly pinpointed 'sub-decisions' which the record[s] informed and illustrated that these records are predecisional." *Khatchadourian v. Def. Intel. Agency*, 597 F. Supp. 3d 96, 116 (D.D.C. 2022) (alteration in original accepted and citation omitted); *see, e.g.*, *Jud. Watch, Inc. v. Dep't of Justice*, 306 F. Supp. 2d 58, 71 (D.D.C. 2004) (concluding that the agency's identified process of "discussion and analysis concerning priorities and the way to structure research, on evaluating impact and implications of Enron for purpose of developing policy" was sufficient to invoke the deliberative process privilege).

Plaintiff counters that the withheld information is not pre-decisional because defendants' explanation "conflates two distinct sub-decisions the agency needs to make: (1) as a matter of law, how to define the standards for issuing an incidental take permit—here, primarily, whether to apply but-for or proximate causation to determine the effects of the proposed action—and (2) as a matter of fact, whether the Owners' application satisfies those standards." Pl.'s Reply at 1–2.  As to the first sub-decision, plaintiff contends that discussions of whether but-for or proximate causation applies to the Permit Application are not predecisional because the decision that but-for causation applies "was already made." *Id.* at 2.  As to the second sub-decision, plaintiff contends that any discussion of whether the Permit Application satisfies proximate causation is similarly not predecisional because applying proximate causation "was never on the table." *Id.*  Plaintiff concedes, however, that any discussion of whether the Permit Applications satisfies but-for causation is predecisional.  *Id.*

Plaintiff's reasoning is predicated on a mischaracterization of defendants' declaration. He argues that one of the "sub-decisions" at issue was whether "as a matter of law" "but-for or proximate causation [applies] to determine the effects of the proposed action," and that this

decision had "already [been] made."  Pl.'s Reply at 1–2.  Plaintiff fails to acknowledge, however, that as part of defendants' decision of whether to issue the requested permit to the Owners, they intended to respond to the Owners' White Paper, the majority of which advocated for "proximate cause," rather than "but for cause," as the appropriate standard to apply when determining the direct and indirect effects of the Owners' proposed action on vehicular strikes of the Florida panther.  *See* Tobias Decl. at 19–29.  Contrary to plaintiff's suggestion, defendants do not contend that they were debating, generally, whether proximate cause applies to determine the effects of a proposed action, but, instead, that they were debating how to respond to the specific arguments in the Owners' White Paper.

Defendants' *Vaughn* Index confirms this understanding.  Only two sets of redactions appear to address but-for causation.  First is the redaction labeled FWS-000037, in an email from a subordinate FWS employee in response to an email from his supervisor that attached a copy of the White Paper for the subordinate employee's review.  *See* 2d *Vaughn* Index at 3.  Defendants explain that in the redacted email response, the subordinate employee provides his "initial reaction, thoughts, and recommendations to and analysis" of the White Paper's arguments about "but for causation" and his recommendation on "the proper scope of analysis" for FWS's review "to determine whether to issue the Incidental Take Permits to [the Owners]."  *Id.*

Second are the written comments by FWS employees, made in the margins of "a section of the White Paper in which the Owners argue against the but-for standard," which comments, plaintiff argues, were improperly redacted because "th[e]se comments presumably concern what the right standard is."  Pl.'s Reply at 2 n.2.  The location of these comments—in the margins of the White Paper, and in response to specific sentences in the White Paper—suggest that these comments do not, as plaintiff suggests, generally consider "what the right standard" is for issuing

an incidental take permit, *id.*, but rather critique specific arguments in the Owners' White Paper about what the Owners believe "the proper scope of analysis for the take and environmental review" associated with FWS's determination of whether to issue, to the Owners, an incidental take permit, 2d Cummins Decl. ¶ 12; *see also* Tobias Decl. at 64–65.  As defendants clearly explain in their *Vaughn* Index, these comments are a FWS subordinate employee's "[f]rank analysis of the arguments presented" in the White Paper, for the purpose of moving "forward the discussion amongst subordinate and superior FWS employees as they attempt to reach a final agency decision" on "the proper scope of analysis for the take and environmental review required as part of the process to determine whether to issue the Incidental Take Permits to" the Owners.  2d *Vaughn* Index at 6.  Put differently, in both sets of redactions described above, any discussion about the appropriate causation standard is directly tied to the White Paper and the arguments made therein.

Thus, the decision at issue was how to respond to the Owners' White Paper and whether to issue an incidental take permit to Owners—not whether FWS should take an agency-wide position on what the appropriate legal standard to apply when evaluating permit applications, or what this position should be.  Plaintiff may be right that FWS "had settled on but-for causation well before the Owners submitted their application" or even that the FWS "was not contemplating changing the standard."  Pl.'s Reply at 5–6.  Even so, consideration by FWS of the arguments in the Owners' White Paper urging application of a proximate causation standard when evaluating the Owners' Permit Application, as well as assessing how to respond to such arguments, would have been perfectly appropriate—and that is precisely what defendants claim to have done. *See* Defs.' Reply at 4–7 (explaining that "Service employees were still debating the merits of the Owners' advocacy for the 'proximate cause' standard," and "at the time of those

discussions, no decision yet had been made specifically as to the application of the standard to the Owners' Permit Application," *id.* at 6 (citing 2d Cummins Decl. ¶¶ 12–13)); *id.* at 9 ("[E]ven though the Service may have released information generally indicating that certain Service employees did not support a 'but-for' standard for such an evaluation, no decision had yet been issued regarding the scope of analysis *for the Owners' Permit Application*." (emphasis added)); *see also Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" (citation omitted)).[3]  In sum, FWS was engaging in the normal deliberative process when confronted with the Owners' positions and arguments set out in the White Paper in support of the Owners' Permit Application and Plan.  This Court heeds the Supreme Court's caution: "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." *Sears, Rosebuck & Co.*, 421 U.S. at 152 n.18.

---

[3]     Plaintiff makes a last-ditch attempt to argue that, even if FWS employees were discussing the arguments contained within the Owners' White Paper, any "debates" could not "have been in service of a decision," since "[e]very [FWS] employee to express an opinion came out against the Owners' legal analysis." Pl.'s Reply at 4. That FWS ultimately disagreed with the Owners' legal analysis, however, does not undermine the pre-decisional nature of FWS's comments, which were made in service of FWS's final decision to disagree with the Owners, as well as its decision about how to express this disagreement to the Owners. *Cf. Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("[A] recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment.  To the contrary, the Supreme Court has held that the deliberative-process privilege protects recommendations that are approved or disapproved without explanation." (citing *Renegot. Bd.*, 421 U.S. at 185)).  In fact, the commentary cited by plaintiff further reinforces the pre-decisional and deliberative nature of the redacted material.  According to plaintiff, FWS employees found the Owners' arguments "highly perplexing" and believed the Owners and FWS to be "at an impasse" with respect to causation. Pl.'s Reply at 4.  Perhaps as a result, FWS employees left comments on the White Paper that they characterized as a "line by line rebuttal" of the Owners' arguments.  *Id.*  Such characterization reinforces that the redacted information was in service of formulating a response to the Owners' White Paper, which is, in turn, part of FWS's process to determine whether to grant the Owners' Permit Application and issue an incidental take permit.

B.      **Defendants' Foreseeable Harm Analysis**

The FOIA Improvement Act provides that "[a]n agency shall . . . withhold

information . . . only if the agency reasonably foresees that disclosure would harm an interest

protected by" one of the nine FOIA exemptions.  5 U.S.C. § 552(a)(8)(A).  This provision

requires agencies to show not only that a withheld record "falls within a FOIA exemption," but

also that "the agency reasonably foresees that disclosure would harm an interest protected by the

exemption."  *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (alteration

in original accepted and citation omitted).

An agency successfully makes this "heightened" showing, *Jud. Watch, Inc. v. Dep't of

Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019), by "identify[ing] specific harms to the relevant

protected interests that it can reasonably foresee would actually ensue from disclosure of the

withheld materials and connect[ing] the harms in a meaningful way to the information withheld,"

*CIR*, 436 F. Supp. 3d at 106 (alteration in original accepted and citation omitted); *see also Reps.

Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369–70 (D.C. Cir.

2021) ("[T]he foreseeability requirement means that agencies must concretely explain how

disclosure 'would'—not 'could'—adversely impair internal deliberations.").

"The agency's burden to demonstrate that harm would result from disclosure may shift

depending on the nature of the interests protected by the specific exemption with respect to

which a claim of foreseeable harm is made."  *Cause of Action Inst. v. Dep't of Veterans Affs.*,

No. 20-cv-997, 2021 WL 1549668, at *15 (D.D.C. Apr. 20, 2021) (alteration in original accepted

and citation omitted); *see Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020)

("The degree of detail necessary to substantiate a claim of foreseeable harm is context-

specific.").  To demonstrate foreseeable harm with respect to the deliberative process privilege,

an agency "cannot simply rely on generalized assertions that disclosure could chill

deliberations," *Machado Amadis*, 971 F.3d at 371 (citation omitted), but instead must "provide

context or insight into the specific decision-making processes or deliberations at issue, and how

they in particular would be harmed by disclosure," *CIR*, 436 F. Supp. 3d at 107 (citation

omitted).[4]  Although agencies "must provide more than nearly identical boilerplate statements

and generic and nebulous articulations of harm," *id.* at 106, they are not required to offer factual

support for the supposed harm, *see Machado Amadis*, 971 F.3d at 371.

Plaintiff contends that defendants have failed to satisfy the foreseeable harm requirement

because "all [they do] is identify the agency's subsidiary decision, note that 'no final decision

had been made on' that decision and say that, as a result, disclosure would 'cause government

employees to be much more circumspect in their written discussion.'"  Pl.'s Reply at 7.  Plaintiff

undersells FWS's *Vaughn* Index and declarations, which make adequate showings of foreseeable

harm.

Defendants affirmatively conclude, with respect to each challenged record, that

disclosure would harm an interest protected by the privilege.  They state that release of the

redacted material would "severely hamper the efficient day-to-day workings of government

agencies because department employees would no longer feel free to work through problems by

---

[4]     Plaintiff also challenges defendants' foreseeable harm analysis for attorney-client privilege withholdings,
but these arguments need not be addressed because no information was withheld solely based on the attorney-client
privilege, and this material was appropriately withheld pursuant to the deliberative process privilege and defendants'
accompanying foreseeable harm analysis is sufficient.  *See generally* 2d *Vaughn* Index.  Moreover, defendants'
foreseeable harm analysis for its attorney-client privilege withholdings is likely adequate.  The purpose of the
attorney-client privilege is to provide an "assurance of confidentiality" to clients, *Coastal States Gas Corp. v. Dep't
of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980), such that disclosure of the privileged information is a harm in and of
itself.  When invoking the attorney-client privilege, therefore, an agency usually does not need to reach far beyond
the fact of disclosure to show foreseeable harm, *see Am. First Legal Found. v. Dep't of Agric.*, No. 22-cv-3029,
2023 WL 4581313, at *8 (D.D.C. July 18, 2023), as FWS has done here, *see* Defs.' Mot., Cummins Decl., Ex. G
("1st *Vaughn* Index") at 1–2, ECF No. 18-11 (explaining that release "would chill Agency employees and Agency
attorneys from seeking or providing legal advice").

sharing ideas with colleagues via email messages" and would "be more circumspect in their written decisions with each other in the future."  Defs.' Mot., Cummins Decl., Ex. G ("1st *Vaughn* Index") at 1, ECF No. 18-11.  "This lack of candor," defendants contend, "would seriously impair the Department's ability to foster the forthright intra-agency discussions that are necessary for efficient and proper decision making, especially as it relates to documentation necessary for adherence to the Endangered Species Act."  *Id.* at 1; *see also* Defs.' Reply at 9 (emphasizing the need of frank conversations to aid decisionmaking "especially as it relates to documentation necessary for adherence to the Act and the consideration of habitat conservation plans submitted with incidental take permits"); *see, e.g.*, *Machado Amadis*, 971 F.3d at 371 (concluding that agency affidavit stating that disclosure of withheld information "would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals" was sufficient to meet the agency's foreseeable harm showing under the deliberative process privilege); *Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52, 61 (D.D.C. 2021) (concluding that foreseeable harm requirement was satisfied by agency affidavit explaining that "[w]ithout the comfort of knowing that their candid discussions on sensitive legal issues will remain private within the Department, State officials and attorney-advisers would foreseeably be discouraged from engaging in those important discussions in the first place, thus seriously harming the Department's internal deliberative processes").

Defendants further argue that "disclosure of preliminary assessments and opinions, such as those shared here, would mislead the public and cause public confusion by releasing information that does not represent a final agency opinion."  1st *Vaughn* Index at 1.  The redacted information includes "initial reactions, analyses, and proposed courses of action" by

18

subordinate FWS employees to the Owners' White Paper, suggesting that this redacted material reflects the opinions of *one* employee, not the agency writ large.  2d *Vaughn* Index at 1; *see, e.g.*, *id.* at 3 ("The information withheld here reflects a subordinate FWS employee's detailed initial reaction, thoughts, and recommendations to and analysis of the [White Paper].").[5]  As defendants explain, "[i]t is critical" to be "able to engage in unfettered internal discussion and advice-seeking before settling on a final response to outside parties," "before responding to an applicant," or before "caus[ing] confusion for other project applicants."  *Id.* at 1–4.  "[O]therwise, the Department's ability to act with one voice and convey accurate and th[o]rough responses to outside parties would be hampered."  *Id.*; *see, e.g.*, *Cause of Action Inst.*, 2021 WL 1549668, at *15 (crediting agency's argument that release of redacted information would "generate confusion" about its plans pertaining to veteran health care and could "create concern among patients, employees, and the community generally"); *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014, 1022–23 (D.C. Cir. 2021) (acknowledging that public confusion matters when it would discourage agency candor or reduce agency efficiency).

That defendants used similar reasoning to show foreseeable harm for each of its redactions is of no concern here, where all the redactions involve responses to and discussions about the same White Paper, and defendants have described their assertations of foreseeable harm with specificity and with adequate context.  *See Machado Amadis*, 971 F.3d at 371; *see also Leopold v. Dep't of Justice*, No. 19-cv-2796, 2021 WL 3128866, at *4 (D.D.C. July 23, 2021) (explaining that "[w]hile nearly identical boilerplate statements of harm are insufficient, the mere recitation of similar reasoning in showing harm does not by itself render that reasoning

---

[5]    Plaintiff renews its argument that "the Service had already codified but-for as the causal standard relevant to the permit applications" and thus that "[i]t is also implausible that disclosing the redacted passages would confuse the public on any material issue."  Pl.'s Reply at 8.  For the reasons explained in detail above, this argument fails to persuade.

boilerplate," and that holding otherwise would place an "untenable burden" on government agencies since "after using one reason for a particular category, it would be barred from using similar reasoning elsewhere").

Here, defendants specifically focused on the redacted information at issue and concluded that disclosure of this information "would" chill future internal discussion necessary to aid decisions about whether to issue incidental take permits and to produce the documentation required by the Endangered Species Act. They further explained that disclosure of the redacted information, which included initial reactions of individual FWS subordinate employees to the Owners' White Paper and draft proposed responses, "would" generate confusion to the Owners, other permit applicants, and outside parties, such as by suggesting that these initial reactions were the agency's final position on specific issues. Defendants' predicted results of disclosure are "exactly what the [deliberative process] privilege seeks to prevent." *Machado Amadis*, 971 F.3d at 371; *see also Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) ("To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure."); *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (explaining that the deliberative process "also avoids confusion from premature disclosure of ideas that are not—or not yet—final policy, and misimpressions from 'dissemination of documents suggesting reasons and rationales' not ultimately relied on"). Accordingly, defendants' foreseeable harm analysis is sufficient.

### C.    Segregability

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt" from disclosure. 5 U.S.C. § 552(b). Producing segregable information is essential for an agency's FOIA

compliance, and "district courts cannot approve withholding exempt documents 'without making an express finding on segregability.'" *Machado Amadis*, 971 F.3d at 371 (quoting *Morley v. Cent. Intel. Agency*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *see also Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." (internal quotation marks and citation omitted)); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (same).

In evaluating segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. Even under that presumption, "the agency must provide a 'detailed justification' for [the exempt material's] non-segregability," but need not "provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). Affidavits attesting to the agency's "line-by-line review of each document withheld in full" and the agency's determination "that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions," in conjunction with a *Vaughn* index describing the withheld record, suffice. *Id.* (internal quotation marks omitted); *see also Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination").

Here, plaintiff does not challenge segregability, and defendants have averred that they "review[ed] the records" to "determine[] whether any information could be segregated," "revisited its previous determinations" while its motion for summary judgment was pending, and

released "all reasonably segregable factual material."  2d Cummins Decl. ¶ 19; *see also*

Cummins Decl. ¶ 26.  Defendants' declarations and *Vaughn* Indexes, credited with being made

in good faith, are sufficient to establish the non-segregability of the disputed exempt records.

## IV.     CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is granted, and

plaintiff's cross-motion for summary judgment is denied.  Defendants' have justified their

withholding of two full pages and redactions in 55 of the 222 released pages under Exemption

5's deliberative process privilege, shown that foreseeable harm would result from further

disclosures, and complied with its segregability obligations.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  March 1, 2024

_____
**BERYL A. HOWELL**
U.S. District Court Judge